# ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL CASE NO. 03-00004 |
| | ) | |
|        Plaintiff, | ) | Garapan, Saipan |
| | ) | Monday, March 31, 2003 |
|        vs. | ) | |
| | ) | |
| JASON RULUKED, | ) | **REPORTER'S TRANSCRIPT OF** |
| | ) | **DEFENDANT'S CHANGE OF PLEA** |
|        Defendant. | ) | |
| | ) | |

F I L E D
Clerk
District Court

**BEFORE THE HONORABLE ALEX R. MUNSON**
**CHIEF JUDGE, UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

AUG - 2 2005

For The Northern Mariana Islands
By_____
(Deputy Clerk)

**APPEARANCES**:

For Plaintiff:        Patrick J. Smith
                      Assistant United States Attorney
                      MARIANAS DISTRICT
                      Horiguchi Building, Third Floor
                      P. O. Box 500377
                      Saipan, MP 96950
                      Telephone: (670) 236-2986
                      Facsimile: (670) 236-2945

For Defendants:       Loren Sutton
  Mr. Jason Ruluked:  Attorney at Law
                      P. O. Box 5593
                      Saipan, MP 96950
                      Telephone: (670) 235-8065
                      Facsimile: (670) 235-8069

Present      :        Defendant Jason Ruluked

---

*SANAE N. SHMULL*
Official Court Reporter
P. O. BOX 5128
SAIPAN, MP 96950

2

**GARAPAN, SAIPAN, MONDAY, MARCH 31, 2003 - 9:30 A.M.**

THE CLERK: Please rise.  This court is again in session;

the Honorable Alex R. Munson, Chief Judge presiding.

THE COURT: Good morning.

MR. SUTTON: Good morning, Your Honor.

THE COURT: Please be seated.

THE CLERK: If Your Honor please, this is Criminal Case 03-

00004, *United States of America v. Jason Ruluked*, coming up for a

hearing on a Change of Plea.

Will counsel please state your appearance?

MR. SMITH: Good morning, Your Honor.  Patrick Smith for the

United States.  With me is Task Force Officer Lieutenant Ed Manalili.

MR. SUTTON: Good morning, Your Honor.  Loren Sutton for

defendant Jason Ruluked.  Jason is present at counsel table with me.

THE COURT: Thank you.  Mr. Sutton, the purpose of this

hearing this morning is for the defendant to enter a change of plea

pursuant to a written plea agreement; is that correct?

MR. SUTTON: That's correct, Your Honor.

THE COURT: I'd ask the clerk to please administer the oath

to the defendant.

THE CLERK: Please rise and raise your right hand.  Do you

solemnly swear that the testimony you're about to give in this case

1  now before this court will be the truth, the whole truth, and nothing

2  but the truth, so help you God?

3          THE DEFENDANT: Yes.

4          THE CLERK: Thank you.

5
6          THE COURT: Sir, you understand that you're -- well, first

7  of all, would you state your name for the record?

8          THE DEFENDANT: Jason Ruluked.

9          THE COURT: And, sir, you understand that you're now under

10 oath, and if you answer any of my questions falsely, you could later

11
12 be prosecuted for making a false statement or for perjury?

13         THE DEFENDANT: Yes.

14         THE COURT: How old are you?

15         THE DEFENDANT: Twenty-one, going on 22.

16         THE COURT: And you're a citizen of what country?

17
18         THE DEFENDANT: Saipan.

19         THE COURT: U.S. citizen?

20         THE DEFENDANT: U.S. citizen.

21         THE COURT: Since your last appearance in court, have you

22 seen a doctor for any medical problems or illnesses or injuries?

23         THE DEFENDANT: Oh, yeah, I have.

24         THE COURT: And were you prescribed any medication?

25         THE DEFENDANT: No.

4

THE COURT: In the last 24 hours, have you consumed any alcoholic beverage, any prescription drug, or any controlled substance?

THE DEFENDANT: Only prescription drugs.

THE COURT: And what kind of prescription drugs?

THE DEFENDANT: Antibiotic for my tooth.

THE COURT: And when did you take that?

THE DEFENDANT: Just this morning.

THE COURT: And does that affect your ability to understand your surroundings?

THE DEFENDANT: No.

THE COURT: Your mind's clear?

THE DEFENDANT: Yes.

THE COURT: You understand what's going on here?

THE DEFENDANT: Yes.

THE COURT: All right.  Mr. Ruluked, have you received a copy of the indictment, that is, a written charges filed against you in this case that charged you with obstruction of justice and making false statements?

THE DEFENDANT: Yeah.

THE COURT: Have you discussed those charges and the case in general with your lawyer Mr. Sutton?

5

1      THE DEFENDANT: Yes.

2      THE COURT: Are you fully satisfied with the counsel,

3  representation, and advice given to you in this case by Mr. Sutton as

4  your attorney?

5      THE DEFENDANT: Yes.

6

7      THE COURT: Now I have a copy of a plea agreement -- well, I

8  have the plea agreement and it's seven pages.  On page 7, there

9  appears to be your signature.  Is that your signature?

10      THE DEFENDANT: Yes.

11

12      THE COURT: Before you signed this, did you read it?

13      THE DEFENDANT: Yes.

14      THE COURT: And before you signed this, did you discuss

15  every aspect of it with your lawyer Mr. Sutton?

16      THE DEFENDANT: Yes.

17

18      THE COURT: Do you think there's any mistakes in it?

19      THE DEFENDANT: No.

20      THE COURT: You think anything was left out of it that you

21  thought was going to be in there?

22      THE DEFENDANT: No.

23

24      THE COURT: Do you understand all of the terms of the plea

25  agreement that you have with the government?

       THE DEFENDANT: Yes.

6

THE COURT: Do you have any questions about it?

THE DEFENDANT: No.

THE COURT: Has anyone made any other or different promise or assurance to you of any kind in an effort to induce you to enter a plea of guilty in this case other than what's in this plea agreement?

THE DEFENDANT: No.

THE COURT: Do you have the plea agreement there in front of you?

THE DEFENDANT: Yes.

THE COURT: You see on that very first line?  It says, "Pursuant to Rule 11(c)(1)(B), the United States and" you "entered into the following agreement." Was it explained to you that that rule 11(c)(1)(B) means that the terms of the plea agreement are merely recommendations to the court, and that I can reject the recommendations without permitting you to withdraw your plea of guilty and impose a sentence that is more severe than you may anticipate?

THE DEFENDANT: What's that? (defendant conversing with his attorney.) Yes.

THE COURT: You've discussed that with your lawyer.

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about it?

THE DEFENDANT: No.

THE COURT: Has anyone attempted in any way to force you to plead guilty in this case?

THE DEFENDANT: No.

THE COURT: Are you pleading guilty of your own free will because you are guilty of these two charges?

THE DEFENDANT: Yes.

THE COURT: You understand that the charges to which you are entering a plea of guilty are felony charges; and a "felony" is defined as a crime that is punishable by more than one-year imprisonment?

THE DEFENDANT: Yes.

THE COURT: Do you understand that if the court accepts your plea, you will be adjudged guilty of those offenses, and that such adjudication may deprive you of valuable civil rights in the future, such as the right to vote, the right to hold public office, the right to serve on a jury, the right to possess any kind of a firearm, and the right to possibly be eligible for federal grants, loans, and aids?

THE DEFENDANT: Yes.

THE COURT: You've discussed all of that with your lawyer?

THE DEFENDANT: Yes.

8

THE COURT: Do you have any questions?

THE DEFENDANT: No.

THE COURT: Now according to this plea agreement in the first page, in paragraph 1, it says that you agree to plead guilty to counts 1 and 2 of the indictment. And Count 1 of the indictment charges you with obstruction of justice. And over on page 2, it explains Count 2, charging you with making false statements. Is that your understanding of the deal that you're going to plead guilty to these two charges?

THE DEFENDANT: Yes.

THE COURT: You've discussed that with your lawyer?

THE DEFENDANT: Yes.

THE COURT: Got any questions about that?

THE DEFENDANT: No.

THE COURT: Do you understand that for Count 1, the obstruction of justice charge, carries a maximum sentence of five years imprisonment, a maximum fine of $250,000, a maximum term of supervised release of three years, a $100 special assessment fee? Do you understand those possible punishments?

THE DEFENDANT: Yes.

THE COURT: Do you also understand that if the court found it appropriate, the court could require you to make restitution to

9

any victim or to give up any property that can be traced to this crime?

THE DEFENDANT: Yes.

THE COURT: Do you also understand that if you're sent to prison and released from imprisonment and put on supervised release, that if you break any of the terms of supervised release, you could go back to prison for the full length of time, that is three years, of the supervised release?

THE DEFENDANT: Yes.

THE COURT: That means that even if you're out on supervised release for two-and-a-half years, and then broke one of the terms, then you could be sent back for three years, not six months. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: For the second charge, that is, making false statements, that charge carries a maximum sentence of five years imprisonment, a maximum fine of $250,000, a maximum term of a three-year supervised release, and a $100 special assessment fee that has to be paid at the time of sentencing. Do you understand those are possible maximum penalties for this crime?

THE DEFENDANT: Yes.

THE COURT: Do you also understand that if you broke any of

the terms of supervised release, that you could be sent back to

imprisonment for the whole term of supervised release?

THE DEFENDANT: Yes.

THE COURT: You understand that the total maximum sentence

of incarceration on both counts is 10 years imprisonment?

THE DEFENDANT: Yes.

THE COURT: Now under the Sentencing Reform Act of 1984, the

United States Sentencing Commission has issued guidelines for judges

to follow in determining sentences in a criminal case.  Have you and

Mr. Sutton talked about the Sentencing Guidelines and how they might

apply to your case?

THE DEFENDANT: Yeah.

THE COURT: Do you understand that the court will not be

able to determine the guideline sentence for your case until after

the presentence report has been completed, and you and the government

have had an opportunity to challenge the reported facts in the

application of guidelines recommended by the Probation Officer?

THE DEFENDANT: Yes.

THE COURT: You understand that the sentence imposed may be

different from any estimate your attorney may have given you?

THE DEFENDANT: Yes.

THE COURT: Do you also understand that after your guideline

11

range has been determined, the court has the authority in some
circumstances to depart from the guidelines and impose a sentence
that is more severe or less severe than the sentence called for by
the guidelines?

THE DEFENDANT: Yes.

THE COURT: Do you understand that in the federal penal
system, there is no parole, and if you're sent to prison, you will
not be released on parole?

THE DEFENDANT: Yes.

THE COURT: Did you and Mr. Sutton also talk about the
sentencing guidelines in your criminal history category?  That means
that if you've been arrested a number of times, that your sentence
can go up higher?

THE DEFENDANT: Yes.

THE COURT: And you understand that this plea agreement does
not take into account your criminal history category, and if your
criminal history category is above one, what is stated in this plea
agreement might be altered by that criminal history category?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about that?

THE DEFENDANT: No.

THE COURT: On page 6 of this plea agreement in paragraph

11, I want to talk to you about that a little bit.  Do you understand that you have a constitutional right to appeal any conviction in this case, and that by entering into this plea agreement, you're giving up that right?

THE DEFENDANT: Yes.

THE COURT: It says here that you agree that you will neither appeal or otherwise litigate under Title 28, United States Code, Section 2255, or Section 2241, any sentence based upon the offense level -- oh, I'm sorry.  First, that you will not appeal any conviction in this case.  And then, it says that you will not appeal any sentence based upon an offense level of 20 or below.  Do you understand that you have a right to file an appeal on both of those things, the conviction and the sentence, and that by entering into this plea agreement, you're giving up that right?

THE DEFENDANT: Yes.

THE COURT: You've discussed that fully with Mr. Sutton?

THE DEFENDANT: Yes.

THE COURT: Have any questions about it?

THE DEFENDANT: No.

THE COURT: It goes on to say that this provision, that is, the waiving of your right to appeal any conviction and sentencing is binding on the parties even if the court employs a guideline analysis

different from that stipulated to within this agreement.  Do you understand that?

        THE DEFENDANT:  Yes.

        THE COURT: Any questions about that?

        THE DEFENDANT: No.

        THE COURT: Now you have some very important constitutional rights that this plea agreement says that you've talked about with Mr. Sutton.  But I need to get on the record that you understand these rights, that you are knowingly, intelligently, and voluntarily agreeing to waive these rights, and give you an opportunity to ask me any questions about these rights if you don't understand them.  You understand that you have a right to plead not guilty to any offense charged against you and to persist in that plea; that you would then have the right to a trial by a jury; that at trial, you would be presumed to be innocent, and the government would have to prove your guilt beyond a reasonable doubt; that you would have the right to the assistance of counsel for your defense, the right to see and hear all of the witnesses and have them cross-examined in your defense, the right on your own part to decline to testify unless you voluntarily elected to do so in your own defense, and the right to the issuance of subpoenas or compulsory process to compel the attendance of witnesses to testify in your defense.  Have you talked about all of

those constitutional rights with Mr. Sutton?

        THE DEFENDANT: Yes.

        THE COURT: Do you understand them?

        THE DEFENDANT: Yes.

        THE COURT: Do you have any questions about them?

        THE DEFENDANT: No.

        THE COURT: Do you understand that if you decided not to testify or put on any evidence, those facts could not be used against you?

        THE DEFENDANT: Yes.

        THE COURT: Talked to Mr. Sutton about that?

        THE DEFENDANT: Yeah.

        THE COURT: Any questions about that?

        THE DEFENDANT: No.

        THE COURT: You further understand that by entering a plea of guilty, if that plea is accepted by the court, there will be no trial, and you will have waived or given up your right for trial, as well as those other rights associated with the trial as I just described them to you?

        THE DEFENDANT: Yes.

        THE COURT: Is your willingness to plead guilty the result of discussions that you or your attorney have had with the attorney

for the government?

THE DEFENDANT: (No audible response.)

MR. SUTTON: Sorry. Could you repeat that, Your Honor?

THE COURT: Yeah. Is your willingness to plead guilty the result of discussions that you or your attorney have had with the attorney for the government?

THE DEFENDANT: Yes.

THE COURT: If you'd look on page 3 of this plea agreement -- first of all, let me tell you that all crimes have what lawyers call elements. You can think of them as parts. And in order for you to be found guilty of any crime, the government has to prove beyond a reasonable doubt that every part of the crime has been satisfied to all 12 people on the jury. If one person on the jury wasn't convinced beyond a reasonable doubt, that one part of the crime was not satisfied, you could not be found guilty. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: As to Count 1, the obstruction of justice charge in paragraph 5 on page 3, in order for you to be found guilty of that count, if you'd look under A, B, and C, the government would have to first prove that there was a proceeding pending before a federal court or a grand jury. And second, that you knew of the pending

judicial proceeding and influenced, obstructed, impeded, or endeavored to influence, obstruct, or impede the due administration of justice in that proceeding. And three, that your acts were done corruptly, that is, that you acted knowingly and dishonestly with the specific intent to subvert or undermine the due administration of justice. Do you understand that if one person out of 12 wasn't convinced beyond a reasonable doubt of all of those elements, you could not be found guilty of that charge?

THE DEFENDANT: Yes.

THE COURT: Have you discussed that with Mr. Sutton?

THE DEFENDANT: Yes.

THE COURT: Have any questions about it?

THE DEFENDANT: No.

THE COURT: On the second charge that begins in paragraph 6 on page 3 of this plea agreement that charges you with making false statements, the government would have to prove beyond a reasonable doubt to all 12 people of the jury, first, that you made a false statement in the manner within the jurisdiction of a government agency. And then you turn the page. Second, that you acted willfully, that is, deliberately and with knowledge that the statement was untrue. And, third, that the statement was material to the government agencies' activities or decisions. You discussed that

1   with Mr. Sutton?

2          THE DEFENDANT: Yes.

3          THE COURT: Do you have any questions about that?

4          THE DEFENDANT: No.

5          THE COURT: Tell me what it is that you did, in your own
6
7   words, that you want to enter a plea of guilty to Count 1 in this

8   indictment charging you with obstruction of justice.

9          THE DEFENDANT: I lied about the City Trust Bank that I'm --
10
           THE REPORTER: What?  Say that again.
11
           THE DEFENDANT: I lied about having participated in the City
12
13  Trust Bank --

14         THE COURT: Well, were you --

15         THE DEFENDANT: -- robbery.

16         THE COURT: I'm sorry.  Go ahead.
17
           THE DEFENDANT: Robbery of the City Trust Bank.  I lied that
18
19  I was involved in the City Trust Bank robbery.

20         THE COURT: Well, were you a witness in a grand jury?

21         THE DEFENDANT: No.

22         THE COURT: Was there a proceeding pending before federal
23
    court?
24
           THE DEFENDANT: Yes.
25
           THE COURT: And did you knew, know of the pending judicial

proceeding?

    THE DEFENDANT: Yes.

    THE COURT: And did you influence or obstruct or impede or endeavor to influence or obstruct or impede the due administration of justice in that proceeding?

    THE DEFENDANT: Yes.

    THE COURT: And did you act corruptly, that is, with the -- that is, did you act knowingly and dishonestly?

    THE DEFENDANT: Yes.

    THE COURT: And did you intend to subvert or undermine the due administration of justice in that manner?

    THE DEFENDANT: Yes.

    THE COURT: And as to Count 2, tell me in your own words what it is that you did that you want to enter a plea of guilty to false statements as charged in Count 2 as a violation of Title 18, United States Code, Section 101.

    THE DEFENDANT: I falsely confessed of, to be involved in the Bank robbery and I had nothing to do with it.

    THE COURT: So you made a false statement in a manner within the jurisdiction of the government's agency?

    THE DEFENDANT: Yes.

    THE COURT: And did you act willfully, that is, deliberately

1   with the knowledge that the statement was not true?

2          THE DEFENDANT: Yes.

3          THE COURT: And was the statement material to the government

4   agency's activities or decisions?

5          THE DEFENDANT: Yes.

6

7          THE COURT: Mr. Smith, if this matter proceeded to trial,

8   what would the government be prepared to prove?

9          MR. SMITH: Judge, before I respond to that, the government

10  would request that you put a few additional questions in support of

11  the factual basis for the plea.  Namely, as alleged in Count 2, that

12  the defendant made false statements about his participation in the

13

14  April 12, 2002 armed robbery.  I think he's alluded to that.  Would

15  the court inquire if that he did it for the purpose of concealing the

16  participation of Norman Kapileo in such armed robbery?

17          THE COURT: Mr. Ruluked, did you make these false statements

18  to conceal the participation of Mr. Kapileo?

19

20          THE DEFENDANT: Yes.

21          THE COURT: In the, in the robbery?

22          THE DEFENDANT: Yes.

23          MR. SMITH: And further on the materiality of the statements

24  as they relate to the government's investigation, Your Honor, did he

25  do that because Norman Kapileo had requested him to do that?  In

other words, falsely confess to the robbery and conceal Norman

Kapileo's participation.

THE COURT: Well, did you falsely confess because Mr.

Kapileo asked you to lie?

THE DEFENDANT: Yes.

THE COURT: What did he tell you to do?

THE DEFENDANT: Cover for him of the City Trust Bank

robbery.

THE COURT: Okay.  Anything further, Mr. Smith?

MR. SMITH: No, Your Honor.  Oh, and in response to the

court's inquiry about what we would prove, Your Honor, we would prove

that this defendant on or about November 26, 2002 made a false

statement to a DPS detective concerning his own participation in the

City Trust Bank robbery.  In essence, he stated that he had done the

robbery together with Linol Borja; that thereafter, after a failed

attempt to cooperate with the government's investigation, this

defendant was arrested on a complaint.  The government charged him in

the complaint with participating in the robbery.  The defendant then

appeared at a meeting with the federal law enforcement officers and

representatives of the U.S. Attorney's Office on or about December

27, 2002, where he essentially reiterated the false story concerning

his own participation in the City Trust Bank robbery, and reiterated

his false statements of concealment regarding the participation of

Norman Kapileo.

On or about January 10th, Your Honor, the government proved

that the defendant then appeared at a meeting at the U.S. Attorney's

Office where he explained that he had covered up for Norman Kapileo

at Norman Kapileo's request, and that he told those lies to help

Norman Kapileo out, but that in fact he had nothing to do with the

robbery.  And the basis for the purported facts in his statement were

statements that had been relayed to him by Norman Kapileo at a

meeting some months before.

We'd also offer the testimony -- in addition to defendant's

admissions that his previous statements were false, we'd offer the

testimony at this defendant's trial of Linol Borja who would state

that it was he, Linol Borja, together with Norman Kapileo who

committed the armed robbery, and that this defendant, Jason Ruluked,

had nothing to do with it.

THE COURT: Thank you, Mr. Smith.  Mr. Ruluked, you've told

me that you've discussed these charges with your lawyer Mr. Sutton,

that you understand what you're charged with, and that you've

discussed the case in general with him.  You and I have gone through

the plea agreement.  You've told me that you've discussed every term

of the plea agreement with your lawyer, that you understand what all

1  of the terms are of the plea agreement.  I've told you what your

2  constitutional rights are.  You've told me you've discussed those

3  with your lawyer, and that you understand all your constitutional

4  rights surrounding a trial, the government's burden of having to

5  
6  prove every element of the crime beyond a reasonable doubt to all 12

7  members of the jury, that you can be represented by a lawyer, that

8  you don't have to testify if you don't want to and that can't be held

9  against you.

10        You've just heard what the Assistant United States Attorney

11
12  has told the court that he believes the government would be able to

13  prove if this matter proceeded to trial.

14        Now based upon all of that information, I ask you how you

15  plead to the charge in Count 1 of the indictment filed in this court

16  on February 5, 2003 that charges you with obstruction of justice in

17
18  violation of Title 18, United States Code, Section 1503?  Do you

19  plead not guilty or guilty?

20        THE DEFENDANT: Guilty.

21        THE COURT: And as to Count 2 charging you with -- how do

22  you plead to the charge of false statements in violation of Title 18,

23  United States Code, Section 1001?

24        THE DEFENDANT: Guilty.

25        THE COURT: It is the finding of the court, in the case of

the *United States of America v. Jason Ruluked*, that the defendant is

fully competent and capable of entering an informed plea, that the

defendant is aware of the nature of the charges and the consequences

of the pleas, and that each plea of guilty is a knowing and voluntary

pleas supported by an independent basis and fact containing each of

the essential elements of each offense.  The pleas and the plea

agreement are therefore accepted, and the defendant is now adjudged

guilty of those two offenses.

I'll set this matter for sentencing on Tuesday, July 8,

2003, at 9:00 a.m. in this courtroom, and order that the presentence

investigative report is due on or before Tuesday, June 3, 2003.

Mr. Ruluked, before a sentencing may occur in this case,

the Probation Department has to conduct an investigation.  You are

required to cooperate by giving information to the Probation Officer.

At any time you meet with the Probation Officer, you may have your

lawyer present with you.  Do you understand that?

THE DEFENDANT: Yes.

THE COURT: After the Probation Officer has completed the

investigation, she will type up a written report.  She'll give a copy

to you and to your lawyer.  If you go through that and think that

there are mistakes in it, you may meet with the Probation Officer;

and if you can convince her that there are errors in the report or

24

misstated facts, she'll amend the report.

THE DEFENDANT: Yes.

THE COURT: If you cannot convince her to amend the report, both your lawyer and you at the time of the hearing will be able to address the court, and the court will make a determination whether to accept or reject the facts reported by the Probation Officer.  Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Also, at the sentencing hearing, your lawyer will be able to address the court on your behalf.  And you, too, will be able to address the court to make your allocution or tell the judge anything that you would think would be important for the judge to know before the judge imposes a sentence.  And if you care to make any statements, you can do so not under oath.  Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Is there anything further to come before the court from the government regarding this matter this morning?

MR. SMITH: Yeah, a few things, Your Honor.  First, we move to unseal the case.

THE COURT: Motion's granted.

MR. SMITH: Second, Your Honor, Lt. Manalili is now going to

serve this defendant with a trial subpoena for Monday's trial in *U.S. v. Kapileo*. There's no agreement between the parties that this defendant will testify. This is not a cooperation agreement. He pled guilty pursuant to the agreement. However, the government does intend to call him as a witness, and if necessary to seek to compel his testimony. I don't think at this point that the defendant has any residual Fifth Amendment Right not to testify. So I'll let the defendant and his counsel discuss among themselves whether they would seek to assert any Fifth Amendment privilege, which I don't think exists, or otherwise seek to resist the lawful subpoena of the court. And we'll take it to the next step if necessary.

THE COURT: Anything further from the defense, Mr. Sutton?

MR. SUTTON: No, Your Honor.

THE COURT: Pursuant to the terms of the plea agreement, I will remand the defendant back to the custody of the United States Marshal until further order of the court. And we will stand in adjournment.

(Court recessed at 10:06 a.m., Monday, March 31, 2003.)

COMMONWEALTH OF THE          )

NORTHERN MARIANA ISLANDS )     ss.

SAIPAN, MP                   )

_____ )

      I, SANAE N. SHMULL, Official Court Reporter for the

United States District Court for the Northern Mariana Islands, do

hereby certify:

      That the foregoing transcript of proceeding in Criminal

Case No. 03-00004, *United States of America v. Jason Ruluked*,

consisting 25 pages, was taken down by me stenographically with a

back-up tape recording device at the time and place indicated herein.

      That the foregoing transcript is a true and correct

record of the proceeding transcribed by me to the best of my ability.

      I further certify that I am not interested in the events

of the action.

      IN WITNESS WHEREOF, I have subscribed my name and signature

this 2nd day of August 2005.

                              _____

                                 SANAE N. SHMULL
                                Official Court Reporter